IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

LUZ DENISE NEGRON-BENNETT,      )
*et al.*,                       )
                                )
     Plaintiffs,                )
                                )
          v.                    )   1:13cv387 (JCC/JFA)
                                )
                                )
JASON LEE MCCANDLESS, *et al.*, )
                                )
     Defendants.                )

# M E M O R A N D U M   O P I N I O N

This matter is before the Court upon several motions
to dismiss Plaintiffs' First Amended Complaint (collectively
"Motions").[1]  [Dkts. 112, 117, 128.]  For the reasons set forth
below, the Court will grant Defendants' Motions.

## I.    Background

### A.  Factual Background

This action arises from Plaintiffs' numerous
interactions with the Arlington County Department of Human

---

[1]   The following named defendants have moved to dismiss Plaintiffs' Amended
Complaint: Arlington County, Sarah Gortenburg, Eliseo Pilco, Jason Lee
McCandless, Jaque L. Tuck, Renee Andrea Perrier, Alyssa Green, Sherri
Brothers, Lakeisha Flores, Valerie Cuffee, Heather Carter-Stowe, Susanne
Eisner, Jonnise Conanan, Ara Tramblian, Stephen MacIsaac, Joseph Haggerty,
Michele Saupp, John Bamford, Brynn Bennett, Daniel Smaldore, Kimberly
Sweeney, Jeremy Stritzinger, M. Douglas Scott, Joanne Hamilton, Arlington
County Office of the County Attorney, Arlington County Police Department,
Arlington County Department of Human Services, Tammee Alsup Gaymon, Laura
Raggins, Stephanie Tebor, Robert Icolari,Richard E. Trodden, Theophani
K. Stamos, Molly H. Newton, Frank A. Frio, and Marjorie Brown (collectively
"Defendants").  [Dkts. 112, 117, 128.]

Services ("DHS"), the Arlington County Police Department ("APD"), and the Commonwealth Attorney's Office during a child custody case that resulted in the removal of Plaintiffs' children. (Am. Compl. [Dkt. 109] ¶¶ 1-2, 19-31.) Plaintiffs allege that Defendants, both individually and collectively, conspired and endeavored to wrong Plaintiffs by removing their children and pursuing several criminal actions against Plaintiff Salim Bennett ("Mr. Bennett"). (*Id.* at ¶¶ 112-27).

As best as the Court can tell, this dispute began in March 2011 when Plaintiff Luz Denise Negron-Bennett ("Mrs. Bennett") contacted APD because Mr. Bennett had struck two of their children. (Am. Compl. ¶ 19.) Mr. Bennett was arrested the next day, and on April 28, 2011, he entered an *Alford* plea of guilty to charges of abuse and neglect. (*Id.*) Proceedings were then initiated in the Juvenile and Domestic Relations District Court for Arlington County, and DHS eventually succeeded in removing the children from Mr. Bennett's custody. *See Bennett v. MacIsaac*, No. 1:11CV920 (JCC/JFA), 2011 WL 5357840, at *1 (E.D. Va. Nov. 7, 2011).

On August 26, 2011, Mrs. Bennett suffered a miscarriage. (Am. Compl. ¶ 25.) During the ensuing hospital stay, Plaintiffs refused to provide DHS with information regarding the children's location. (*Id.* at ¶¶ 26-30.) DHS repeatedly informed Plaintiffs that, pursuant to a court order,

2

they had an obligation to provide the name, address, and telephone number of anyone watching the children. (Am. Compl. ¶¶ 26-30.) Plaintiffs dispute the existence of any such order. (*Id.*)

On August 28, 2011, Mrs. Bennett returned home and notified DHS that the children were again in her custody. (Am. Compl. ¶ 31.) DHS then came to the home and removed the children because "their whereabouts were unknown for 48 hours." (*Id.* at ¶ 32.) According to Plaintiffs, DHS acted without authority and unlawfully detained Mrs. Bennett throughout this time. (*Id.* at ¶¶ 31-38.) Shortly thereafter, several police officers arrested Mr. Bennett in the family home on grounds that his presence also violated a protective order. (*Id.* at ¶ 51.) Plaintiffs, however, allege that this arrest was unlawful because the protective order did not prohibit Mr. Bennett's presence when the children were absent. (*Id.* at ¶ 52.)

While not entirely clear, it appears that the Arlington County Juvenile and Domestic Relations District Court held a hearing regarding the children's removal on September 1, 2011. (Am. Compl. ¶ 76.) Plaintiffs allege that DHS fabricated cause to justify the removal. (*Id.* at ¶ 60.) Plaintiffs further claim that DHS unjustifiably refused to permit the children to stay with Mrs. Bennett's relatives and instead placed them in foster care. (*Id.* at ¶ 43.) According to

3

Plaintiffs, this decision was motivated by their race.  (Am. Compl. ¶¶ 44-46.)

Between September 2011 and November 2011, the Commonwealth Attorney's Office filed numerous charges against Mr. Bennett for violating his probation and failing to adhere to the aforementioned protective orders.  (Am. Compl. ¶¶ 47-54, 57-75.)  Although the exact disposition of these matters is uncertain, Plaintiffs allege that these charges were "malicious, unreasonable and retaliatory."  (*Id.* at ¶ 57.)

Tying all of their claims together, Plaintiffs allege that Defendants, individually and in their official capacities, conspired to violate their constitutional rights and keep Mr. Bennett out of the family home.  (Am. Compl. ¶¶ 112-27.)  In support of this conspiracy, Plaintiffs point to the fact that all of the Defendant are, or were, Arlington County employees. (*Id.*)

B.   Procedural History

Plaintiffs first Complaint, filed on March 25, 2013, named nearly fifty defendants and asserted nine causes of action.  [Dkt. 1.]  On May 28, 2013, several defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8, 10, 12, and 20.  [Dkts. 12, 15.]

By Order dated July 24, 2013, this Court directed Plaintiffs to file a particularized amended complaint because

their initial pleading failed to comply with Rule 8 of the
Federal Rules of Civil Procedure.  [Dkt. 96.]  The Court
separately denied the pending motions to dismiss as moot.  [Dkt.
111.]

Plaintiffs timely filed their Amended Complaint on
August 5, 2013.  [Dkt. 109.]  Spanning over sixty pages, the
Amended Complaint names thirty-two defendants and contains
approximately seven tenuous causes of action.  The vast majority
of these claims are asserted against "all Defendants" or "the
Defendants" without limitation.  (Am. Compl. ¶¶ 168-205.)  In
addition, the "Factual Allegations" section alleges various
other transgressions on the part of Defendants, couched in
quasi-legal language, including "negligence and gross
negligence," "abuse of process," "intentional infliction of
emotional distress," "negligent infliction of emotional
distress," and "negligent hiring, training, supervision and
retention." (*Id.* at ¶¶ 57, 86, 95.)  It is unclear whether
these allegations are themselves intended to constitute
additional causes of action.

Defendants have now moved to dismiss Plaintiffs'
Amended Complaint pursuant to Federal Rules of Civil Procedure
8, 10, 12, and 20.  [Dkts. 112, 117, 128.]  Plaintiffs have
responded, [Dkts. 123-25, 130], and Defendants' Motions are
before the Court.

## II.      Standard of Review

A.  Rule 8

Rule 8 of the Federal Rules of Civil Procedure
requires that a complaint contain "a short and plain statement
of the claim."  Fed. R. Civ. P. 8(a)(2).  This rule further
necessitates that each averment "be simple, concise, and
direct."  Fed. R. Civ. P. 8(d)(1).  While courts must liberally
construe *pro se* civil rights complaints to address
constitutional deprivations, *see Gordon v. Leeke*, 574 F.2d 1147,
1151 (4th Cir. 1978), "[p]rinciples requiring generous
construction of *pro se* complaints are not . . . without limits,"
*Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.
1985).  "Even *pro se* plaintiffs must recognize Rule 8's vision
for 'a system of simplified pleadings that give notice of the
general claim asserted, allow for the preparation of a basic
defense, narrow the issues to be litigated, and provide a means
for quick dispositions of sham claims.'"  *Sewraz v. Guice*, Civil
Action No. 3:08cv35, 2008 WL 3926443, at *1 (E.D. Va. Aug. 26,
2008) (citations omitted).  Protracted pleadings that consist of
confusing narrative place an unjustified burden on the court and
the party who must respond.  *See North Carolina v. McGuirt*, 114
F. App'x 555, 558-59 (4th Cir. 2004).  A complaint that fails to
comply with these pleading requirements is subject to dismissal

6

pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  *McGuirt*, 114 F. App'x at 558.

> B.   Rule 20

The Federal Rules of Civil Procedure also limit a

plaintiff's ability to join multiple defendants in a single

pleading.  *See* Fed. R. Civ. P. 20.  While a plaintiff may freely

join several claims against a single defendant, *see* Fed. R. Civ.

P. 18(a), multiple defendants may be joined only if their

liability arises from the "same transaction, occurrence, or

series of transactions or occurrences" and a common question of

law or fact exists as to all defendants, Fed. R. Civ. P.

20(a)(2).  Rule 20 does not authorize a plaintiff to add claims

"against different parties [that] present[ ] entirely different

factual and legal issues."  *Lovelace v. Lee,* No. 7:03CV00395,

2007 WL 3069660, at *1 (W.D. Va. Oct. 21, 2007) (citation

omitted).  Further, a court may "deny joinder if it determines

that the addition of the party under Rule 20 will not foster the

objectives of the rule, but will result in prejudice, expense,

or delay."  *Aleman v. Chugach Support Servs., Inc.,* 485 F.3d

206, 218 n.5 (4th Cir. 2007) (identifying the purposes of Rule

20 as promoting convenience and expediting the resolution of

disputes).

### III.    Analysis

The Court has carefully reviewed the Amended Complaint, Plaintiffs have again submitted the type of "mishmash" pleading that the above-mentioned rules were designed to prevent.  *See George v. Smith*, 507 F.3d 605, 607 (4th Cir. 2007).

First, despite this Court's prior Order directing Plaintiffs to file a particularized pleading, [Dkt. 96], the Amended Complaint qualifies as neither "short" nor "plain" as Rule 8 requires.  Plaintiffs' Amended Complaint represents a disorienting mix of allegations with relevant facts, irrelevant facts, disjointed narrative, conclusory accusations, and legal argument written in a highly confusing manner.  Since any material allegations are buried beneath numerous pages of rambling irrelevancies, it is essentially impossible to separate the legally significant from the legally insignificant facts. Such pleading requires the Court to constantly cross-reference the factual narrative section and "wade indeterminately through the morass of superfluous detail."  *McGuirt*, 114 F. App'x at 559; *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (affirming the district court's dismissal of a complaint that incorporated by reference 146 numbered paragraphs of factual allegations into each claim, incorporated the allegations of each preceding claim, entailed numerous

immaterial and rambling factual allegations, and charged "all defendants" in each count).

Further complicating this Court's analysis is the organizational structure Plaintiffs employ. The Amended Complaint consists of at least 205 numbered paragraphs loosely organized into several sections, and Plaintiffs have done little to synthesize this material into a coherent configuration. For example, although the Amended Complaint contains a "Legal Claims" section that identifies seven causes of action, (Am. Compl. ¶¶ 168-205), the "Factual Allegations" section alleges various other transgressions couched in quasi-legal language, (Am. Compl. ¶¶ 57, 86, 95.) It is unclear whether these allegations are themselves intended to constitute additional causes of action. Moreover, the vast majority of these claims are asserted against "all Defendants" or "the Defendants" without limitation.

While it is apparent from oral argument that Mrs. Bennett, as a second-year law student, has significant legal training, Plaintiffs' Amended Complaint falls short even affording it the liberal construction granted to *pro se* pleadings. [2] *See Thompson v. Echols*, No. 99-6304, 1999 WL 717280, at *1 (4th Cir. Sept. 15, 1999). The length and

---

[2]  In fact, Mrs. Bennett specifically admitted to completing a course on civil procedure and studying the procedural rules at issue. As evident from the discussion below, however, her purported knowledge is not on display in the Amended Complaint.

confusing manner of the Amended Complaint fails to give Defendants fair notice of Plaintiffs' claims and the grounds upon which they rest, thereby impeding their ability to frame responsive pleadings and prepare defenses.  Plaintiffs have similarly burdened the Court with fishing through the Amended Complaint to reconcile its extensive factual allegations with the various causes of action, an endeavor considerably aggravated by the Amended Complaint's indiscriminate allegation of every cause of action against every Defendant.  The Court declines to undertake such a task.  *See Beaudett*, 775 F.2d at 1277-78 (noting that if a complaint "present[s] obscure or extravagant claims defying the most concerted efforts to unravel them," then a court is not required to be a "mind reader[ ]" and "conjure up questions never squarely presented to" it).  As such, the Amended Complaint is unfit to proceed as filed.  *See, e.g., McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996).

Furthermore, Plaintiffs did not, as requested, limit the Amended Complaint to a single defendant or a group of defendants in compliance with Rule 20.  During the course of events described above, Plaintiffs found themselves opposite various government officials in several locations over a period of more than one year.  While geographic and temporal realities make plain that not all Defendants could have participated in every act complained of, Plaintiffs have once again alleged every

cause of action against all Defendants.  (Am. Compl. ¶¶ 168-205.)  Plaintiffs' general allegations fail to connect every Defendant to each cause of action as required.  *See Jackson v. Olsen*, Civil Action No. 3:09cv43, 2010 WL 724023, at *8 (E.D. Va. Mar. 1, 2010) ("Plaintiff's amended complaint raises a variety of claims against many defendants.  The claims arise from separate events which involve interactions with Plaintiff. 'As such, this [amended] complaint comprises multiple law suits, rather than one suit.'" (citation omitted)).  Given the number and diversity of Defendants, and the breadth of the allegations, conclusory accusations of wrongdoing by "Defendants" will not suffice.

Although Plaintiffs allege that a conspiracy existed among the Defendants in an apparent attempt to establish some commonality, their conspiracy claim is itself insufficient. Plaintiffs' argument is largely premised upon the fact that Arlington County employed all of the Defendants.  (Am. Compl. ¶¶ 112-27.)  Despite Plaintiffs' belief otherwise, such vague factual assertions do not "reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Ruttenberg v. Jones*, 283 F. App'x 121, 132 (4th Cir. 2008) (citation and internal quotation marks omitted).  Because Plaintiffs' charge of a conspiracy "amounts to no more than a

legal conclusion . . . it fails to assert a plausible claim." *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009); *see also Jackson*, 2010 WL 724023, at *3 ("[A] plaintiff cannot satisfy the requirements of Rule 20(a) with conclusory allegations of a conspiracy.").

Plaintiffs' argument that the Court should sever the impermissible Defendants in lieu of other sanctions for their failure to comply with Rule 20 is unavailing.  (Reply Br. in Opp'n to Mot. to Dismiss [Dkt. 125] at 7.)  While this relief is certainly available, *see* Fed. R. Civ. P 21, the aforementioned pleading deficiencies make it impractical to attempt to sever the Amended Complaint into discrete groups of reasonably related claims and allow them to proceed separately.

Though dismissal with prejudice for failing to obey the abovementioned pleading standards is generally disfavored, the Court finds that such action is necessary given Plaintiffs' unwillingness to comply with the Court's prior Order and their penchant for filing frivolous proceedings based upon these facts.[3]  *See McGuirt*, 114 F. App'x at 558-59 (upholding district court's dismissal with prejudice after plaintiff's amended complaint failed to comply with Rule 8(a)); *Titan Atlas Mfg., Inc. v. Sisk*, Nos. 1:11CV00012, 1:11CV00068, 2013 WL 3283543, at

---

[3] Plaintiffs have filed at least two other actions in this Court stemming from the removal of their children, both of which were dismissed for failure to state a claim.  *See Bennett v. MacIsaac,* 1:11-CV-920 (E.D. Va. Nov. 7, 2011); *Manship v. Brother*, 1:11-CV-1003 (E.D. Va. Dec. 27, 2011).

*3 (W.D. Va. June 28, 2013) ("Rule 41(b) allows for involuntary dismissal of claims where 'the plaintiff fails to prosecute or to comply with these rules or a court order.'" (citation omitted)); *Hope v. Johnson*, Civil Action No. 3:08CV563, 2009 WL 3805701, at *2-3 (E.D. Va. Nov. 12, 2009) (dismissing plaintiff's suit where he failed to file an amended complaint in accordance with the Court's direction); *see also Kuehl v. FDIC*, 8 F.3d 905, 907-09 (1st Cir. 1993) (upholding district court's dismissal with prejudice after plaintiff's amended complaint failed to comply with Rule 8(a)).

The clear lack of support for Plaintiffs' claims further supports this disposition. *See McHenry*, 84 F.3d 1172 at 1179 ("The 'harshness of a dismissal with prejudice is directly proportionate to the likelihood that plaintiff would prevail if permitted to go forward to trial.'" (citation omitted)). Most of Plaintiffs' Amended Complaint, to the extent it is comprehensible, would be dismissed without ever reaching the merits. For instance, the doctrine of prosecutorial immunity categorically bars Plaintiffs' allegations against the Commonwealth Attorney defendants. *See Williams v. Bowen*, Civil Action No. 3:12CV139-HEH, 2013 WL 5322867, at *4 (E.D. Va. Sept. 23, 2013) ("Absolute immunity protects those 'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his

13

role as an advocate for the State.'" (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).  Likewise, given the factual basis for this matter occurred in 2011, Plaintiffs' claim under 42 U.S.C. § 1986 falls outside the one-year statute of limitations applicable to such actions.  *See Matthews v. Howard Cnty., Md.*, No. 99-2654, 2000 WL 790963, at *1 (4th Cir. June 20, 2000) (noting that § 1986 contains its own one-year statute of limitations).  In short, there is no likelihood that Plaintiffs would prevail if permitted to go forward.  *See McHenry*, 84 F.3d at 1179 ("[D]ismissal with prejudice was really not very harsh, because if the complaint were not dismissed under Rule 8, most of it would be dismissed anyway without ever reaching the merits.").

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss.  Additionally, because the analysis set forth above is equally applicable to the non-moving defendants, the Court finds it appropriate to dismiss this case in its entirety.  *See Berry v. Gorman*, Civil Action No. 7:12cv00500, 2012 WL 5941488, at *1 (W.D. Va. Nov. 27, 2012) (dismissing plaintiff's complaint *sua sponte* for failure to

comply with Rule 8 (citation omitted)).   An appropriate order

will issue.

```
                                        /s/
                              _____
October 8, 2013                     James C. Cacheris
Alexandria, Virginia         UNITED STATES DISTRICT COURT JUDGE
```